St. Michael's Ukrainian Greek Catholic Church of Woonsocket, Rhode Island *vs.* Constantine Bohachewsky *et al.*

APRIL 13, 1927.

Present: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)    Church Organizations.*

If a church is organized to be affiliated with a body of a particular religious belief and becomes so affiliated and property is given for the use of a church of such affiliation, and is once dedicated to such purpose, such property can not against the wish of minority members be diverted to the use and maintenance of a different religious belief.

*(2)    Church Organizations.    Preliminary Injunctions.*

Where a church was organized as an independent church and property was donated for the use of such church and the corporation did not consent to an affiliation with the Church of Rome and records were falsified to show that the members of the corporation had submitted themselves and the corporation property to the dominion of said Church, taking into consideration the question of relative inconvenience of the parties, a preliminary

injunction enjoining the Bishop and pastor from interfering with the church assets and property, including parish house and church edifice; from interfering with the corporation as to selecting a pastor and from interfering with anyone selected to conduct religious services, and requiring the respondent pastor to vacate the parish house after a specified time, was not an abuse of discretion.

Sweeney, J., dissenting.

Bill in Equity on facts stated in opinion. Heard on appeal of respondents and dismissed.

Rathbun, J. This is a bill in equity to restrain the respondents from interfering with the complainant (which is a corporation) and its officers and members in the free use of its property which comprises a parcel of land with a church and parish house thereon; also to determine the respective rights of the parties relative to the use of said property. The cause is before us on the respondents' appeal from a decree of the Superior Court temporarily enjoining the respondents from such interference.

The complainant contends that the corporation was formed and the church property acquired with the intention that the organization should be and remain an independent church with no affiliation with and subject to no jurisdiction of the Holy Roman Catholic Church. The respondents not only deny this contention but contend that, even if the church in question was organized and incorporated as an independent church, the corporation thereafter by vote of its members voluntarily affiliated itself with the Church of Rome and voluntarily placed its property under the jurisdiction and control of said church.

Respondent Bohachewsky is, by appointment of the Pope, the Greek Catholic Bishop of North America. Respondent Chlib Werchowsky, who is the pastor of the church in question, received his appointment from said bishop and assumes, under his direction, to control the affairs of said church and to officiate as pastor thereof against the wishes of the officers of the corporation and, as the complainant contends, contrary to the wishes of the

great majority of the members of the corporation. Before the incorporation the church society existed as a voluntary association.

For the purpose of showing that the voluntary association was incorporated as a church with the intention that it should be independent of the Church of Rome, the complainant introduced the articles of association issued by the Secretary of State of the State of Rhode Island November 22, 1909, whereby seven individuals of the city of Woonsocket were granted a charter under the general laws of the State. By said charter the corporate name was fixed as "St. Michael's Greek Catholic Ruthenian Church of Woonsocket". The charter specified that the purpose of the corporation was: "Forming an organization for religious association and for charitable purposes. To purchase and hold land and buildings thereon for religious and charitable purposes. To purchase and hold land to be used for the burial of the members of said society."

It is clear that the corporation in 1923 voted to change the name of the corporation by inserting the word "Ukrainian" in lieu of the word "Ruthenian". The amendment, as filed with the Secretary of State, purported to amend the charter not only as to name but so as to place the church in affiliation with the Church of Rome and the property of the corporation under the dominion of the Greek Catholic Bishop of North America, so that said property could not be alienated without the consent of said bishop or his successor in office. Considerable testimony was introduced to the effect that the members of the corporation not only never voted to amend the charter, except as to name, but that no proposition to amend the charter, other than as to name, was ever submitted for consideration to a meeting of the corporation. On the books of the corporation is a record which purports to show a vote to secure an amendment to the charter substantially in accordance with the amended articles which were later filed with the Secretary of State.

The complainant contends that the amendment, except as to name, was procured by fraud of the person who was pastor of the church at that time and that, until the present difficulty reached a climax, the members of the corporation were entirely ignorant of the fact that any attempt had been made to amend the charter except as to name. The secretary who wrote said record testified that he truly recorded the vote to obtain an amendment to the charter, as to name, and that he thereafter, because of fear brought about by threats and intimidations by the person who was pastor at the time, tore from the record book, at his command, the pages on which had been recorded the actual vote as to obtaining an amendment to the charter and wrote into the record book, from a copy supplied by said pastor, the record now in question. An examination of the record book discloses that pages of said book have been removed. The secretary testified that he, as soon as possible thereafter, resigned because of fear as to the consequences of his act and that a certified copy of the record in question was obtained from him by said pastor, to be filed with the Secretary of State, by misrepresenting the nature of a written document, which was a translation of said record into the English language, and required him, when he was no longer secretary, to certify, as though he were secretary of the corporation, that the document was a true copy of the record of proceedings at a meeting of the corporation.

It appears that since the incorporation most if not all of the pastors of the church have been priests in communion with the Church of Rome; that the corporation requested said bishop to remove respondent Werchowsky as pastor and that when the Bishop refused to accede to the request a large number of the members of the corporation refused to attend services at the church, picketed the church for a time and finally drove the pastor from the church by pelting him with eggs. Thereafter Bishop Bohachewsky filed in the Superior Court a bill in equity to enjoin certain members of the corporation from doing acts to prevent said Wer-

chowsky from conducting religious services in the church edifice and to enjoin said members from interfering with such services. Thereupon the complainant herein brought this bill to obtain an injunction against said bishop and pastor. The two bills were heard together by a justice of said court on their respective prayers for a preliminary injunction. After an extended hearing, at which the merits of the controversy were considered at length, the Bishop's prayer for temporary relief was denied and a decree was entered enjoining, until further order of the court, the Bishop and pastor from interfering with the church assets and property including the parish house and church edifice, from interfering with the complainant as to selecting a pastor and from interfering with any pastor or other persons selected by the complainant to conduct religious services, with a proviso that respondent Werchowsky might for a period of thirty days continue to occupy the parish house.

The respondents contend that said justice abused his discretion especially in entering that portion of said decree which required the pastor to vacate the parish house which they contend was in his exclusive possession.

There is little dispute as to the law applicable to the case.

(1) If the church was organized to be affiliated with the Church of Rome and became so affiliated, and the property was given for the use of a church of such affiliation, and was once dedicated to such purposes, counsel agree that such property can not, against the wish of the minority members, be diverted to the use and maintenance of a different religious belief. On the other hand, if the church was organized as an independent church and the property was donated for and became dedicated to such a purpose and thereafter the church adopted a different religious belief so that said property, by general consent, became dedicated to the use of a church of such different religious belief, counsel appear to agree that the church may by vote of the corporation return to its original faith and again use the property for the purpose for which it was donated and first dedicated.

See *Watson* v. *Jones*, 13 Wall. 679; *Lindstrom* v. *Tell*, 131 Minn. 203; 8 A. L. R. 113.

The trial justice found that the church was organized as an independent church; that the property was donated for the use of such church; that the corporation did not consent to an affiliation with the Church of Rome and apparently that the corporation records were falsified for the purpose of furnishing evidence tending to show that the members of the corporation had submitted themselves and the corporation property to the dominion of said church.

(2)

It appears that at a meeting of the corporation it was unanimously voted to remove the Bishop as a member of the board of trustees. How many members were present and so voting does not clearly appear, and the validity of the action taken by such vote is not clear. The witness who translated the record of that meeting testified that: "There is one paragraph in which it says that those who did not go with the people should leave the hall" and that certain members did not remain. However, that question is of little importance now because the decision of said justice was based on the finding that the church was organized as an independent church; that the property was acquired for the use of such a church and that the church had not changed its faith and that the corporation had never voluntarily submitted to the jurisdiction of the Church of Rome, and incidently to the jurisdiction of the Greek Bishop thereof in North America.

It would seem that the complainant was in possession of the church edifice (although it is not entirely clear that this is so) and that the pastor was probably in complete possession of the parish house. Counsel for the respondents suggest that said justice abused his discretion in entering that portion of the decree which required the pastor to vacate the parish house.

We agree with respondents' contention that the discretion to grant mandatory injunctions should be exercised sparingly and only in cases where the right is very clear.

Counsel for respondents cite 32 C. J. p. 24-25, which contains the following statement: "In a number of decisions it is either said or held without qualification that a mandatory injunction will not be issued on an interlocutory application; that an injunction, unless issued after the decree, when it becomes a judicial process, can be used only for the purpose of prevention and protection, and not for the purpose of compelling defendant to undo anything which he had previously done. But this view is against the weight of authority, which recognizes the power of a court of equity to award preliminary mandatory injunctions, and holds that it is proper to do so in extreme cases where the right is very clear indeed, and where considerations of the relative inconvenience bear strongly in complainant's favor; and especially is this so where the acts complained of are willful and fraudulent and without any pretense of right."

Said justice devoted several days to the trial of the cause. The merits were considered at unusual length for a hearing for' a preliminary injunction. His language shows that he was thoroughly convinced not only as to the justice of the complainant's cause and the right to a mandatory injunction, but also that, "the actions complained of are willful and fraudulent and without any pretense of right". As to the relative inconvenience of the parties the case is not so strong. The injunction can cause little, if any, inconvenience to the Bishop but the order, directing the pastor to vacate the parish house after thirty days, necessarily causes him some inconvenience. On the other hand, the parish house was designed to be used, and is used, not only as a place of residence for a pastor but also as a storage place for the safe-keeping of valuable articles of church property which are habitually used in the service. It would appear that the free use of the church edifice and said articles would be greatly curtailed without the use of at least a portion of the parish house which, so far as appears is not devisible. Said justice saw and heard the witnesses and we have not; after a careful examination of the record

we can not say that his conclusions were unjustified or that he abused his discretion.

The appeal is dismissed; the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

Sweeney, J., dissenting. This appeal from an interlocutory decree granting a preliminary injunction transfers to this court only the question whether the decree appealed from should be affirmed, reversed or altered. § (4967), Gen. Laws 1923. "Of course the granting of a preliminary injunction is not a final determination of the rights of the parties, and it is not to be so understood in this case." *Armour* v. *Hall*, 38 R. I. 300. The merits of this case, therefore, are not before the court for determination at the present time, and I shall not discuss the same.

The complainant is a corporation organized under the General Laws of this State for religious and charitable purposes. For several years its religious services were conducted in different buildings. In the course of time complainant purchased a lot of land on Blackstone street, Woonsocket, and erected thereon a church and a dwelling house to be used as a residence by the pastor of the church. The church was dedicated in August, 1924, by the respondent Bishop Bohachewsky of Philadelphia. The pastor of said church from the time of its organization has been appointed by this Bishop or his predecessors in office. In April, 1925, Bishop Bohachewsky appointed respondent Rev. Chlib Werchowsky pastor of said church. Rev. Werchowsky immediately entered upon the performance of his pastoral duties. He lived in the parish house and conducted the services in the church until the last Sunday in July, 1925, when he was forcibly prevented from so doing by several persons who claimed to be members of the congregation. The opposition continuing, the Bishop and pastor filed a bill in equity in the Superior Court for an injunction to restrain these persons from obstructing the

pastor in the performance of religious services in the church. On the day appointed for the hearing on this bill the church corporation filed a bill in equity for an injunction against the Bishop and the pastor to restrain said pastor from conducting services in the church and ordering him to vacate the parish house. This bill admits that Bishop Bohachewsky appointed Rev. Werchowsky pastor of the church. It alleges that some of the members of the congregation became dissatisfied with the pastor and requested the Bishop to withdraw him from the pastorate, and that he declined to do so. The complainant claims the right to select its own pastor without the approval of the Bishop. After hearing, a decree for a preliminary injunction was entered enjoining Rev. Werchowsky from conducting religious services in the church and ordering him to vacate the parish house within thirty days.

Respondents claim that this decree is contrary to the law and the evidence and constitutes an abuse of judicial discretion.

The purpose of a preliminary injunction is clearly stated in *Armour* v. *Hall, supra,* as follows: "Its office is to hold matters approximately in *statu quo* and to prevent the doing of any act whereby the right in question may be irreparably injured or endangered until, after the pleadings are completed and the issues are joined, upon final hearing with the whole matter before it, the court may determine all rights involved." To the same effect are the cases: *American Electrical Works* v. *Varley Duplex Magnet Co.,* 26 R. I. 440; *Blackstone Hall Co.* v. *R. I. Hospital Tr. Co., Trustee,* 39 R. I. 69. Contrary to the purpose so clearly stated in these cases the preliminary injunction appealed from does not hold the matters involved in *statu quo,* but, to the irreparable injury of the respondent Rev. Werchowsky, he was ordered to vacate the parish house within thirty days after the entry of the decree and to immediately cease conducting religious services in the church, although he, or his predecessors in office, had occupied the parish house and con-

ducted religious services in the church for several years. The pastor, Rev. Werchowsky, and his predecessors in office have been in the actual, peaceable occupancy and possession of the church and parish house under a claim of right for many years. It is very generally held improper to issue a preliminary injunction, the effect of which will be to compel the transfer of property from one litigant to another. 32 C. J. 26, 134. This court held in *Jenckes* v. *Cooke,* 8 R. I. 336, that pending an investigation at law into the title to real estate the occupancy of the party in possession would not be disturbed by a court of equity on a motion for a preliminary injunction. In a note to *Hutton* v. *Hammond,* 32 A. L. R. 888, 894, it is stated: "Generally, it may be said that the function of a preliminary or interlocutory injunction is to afford preventive relief by preserving the *status quo,* and not to redress alleged wrongs which have already been committed. In harmony with this view, it is usually held that an interlocutory or preliminary injunction will not be issued to take property out of the possession of one person and put it into that of another; nor will such an injunction be issued which indirectly has that effect." Cases from thirty-two jurisdictions are cited in support of this proposition.

In view of the unquestioned facts and the law above stated, I am of the opinion that the entry of the decree for a preliminary injunction appealed from was an abuse of judicial discretion and contrary to law and should be reversed.

*Everett L. Walling, John R. Higgins,* for complainant.

*Patrick P. Curran, Hoyt W. Lark, Curran, Hart, Gainer & Carr,* for respondents.